UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

SHERRY LEE ANN ROBERTS,              )
                                     )
        Plaintiff,                   )
                                     )
    vs.                              )    Case No. 1:11-CV-75   (CEJ)
                                     )
MICHAEL J. ASTRUE, Commissioner      )
of Social Security,                  )
                                     )
        Defendant.                   )

## MEMORANDUM AND ORDER

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

## I. Procedural History

On February 22, 2006, plaintiff Sherry Lee Ann Roberts filed an application for supplemental security income, Title XVI, 42 U.S.C. §§ 1381 *et seq.*, with an alleged onset date of November 23, 2005. (Tr. 96). After plaintiff's application was denied on initial consideration (Tr.72-76), she requested a hearing from an Administrative Law Judge (ALJ). See 78-79 (acknowledging request for hearing).

Plaintiff and counsel appeared for a hearing on August 30, 2007. (Tr. 26-49). ALJ James E. Seiler issued a decision denying plaintiff's application on October 25, 2007 (Tr. 13-23), and the Appeals Council denied plaintiff's request for review on December 9, 2008. (Tr. 1-3). Plaintiff then filed a civil action in the district court. On January 29, 2010, after a hearing, the district court remanded the case to the ALJ for further proceedings and the use of a vocational expert. (Tr. 443-457). On March 4, 2010, the Appeals Council remanded the case to an ALJ for additional proceedings. (Tr. 439-440). On August 5, 2010, plaintiff, her counsel, and a vocational expert appeared for an administrative hearing. (Tr. 359-409). The plaintiff's application was

denied on February 24, 2011.  (Tr. 340-351).   Accordingly, the ALJ's decision stands as the Commissioner's final decision.

## II.  Evidence Before the ALJ

### A.  Disability Application Documents

In her Disability Report (Tr. 114-125), plaintiff listed her disabling conditions as depression, anxiety, back pain, chronic pain, and lumbar degenerative disc disease. She stated that she has difficulty standing due to her back condition, and that people make her nervous.  Plaintiff listed past employment as a certified nursing assistant at a nursing home, a line worker in a car factory, and a "junk mail" processor in a factory. She wrote that she was unemployed and had not worked since 1997.  Plaintiff reported taking hydrocodone for her back pain and prenatal vitamins because her hair was falling out.

In her Function Report (Tr. 135-143), plaintiff stated that she lives with her parents.  On an average day, she takes her medicine, lies on the couch, attempts to watch television or read, and makes herself soup or a sandwich.  She indicated that her personal care and her daily activities have changed due to pain in her leg, hip, and back.  She reported that she has difficulty walking and sometimes trips; that she cannot not shave her legs without losing her balance; that she cannot not cook meals that require her to stand for an extended length of time; and that sweeping the kitchen and bathroom takes her 30 minutes because she must take breaks.  Plaintiff went to monthly doctor appointments, but she did not drive herself.  She reported difficulty counting change, paying bills, using a checkbook, and handling a savings or checking account.  She indicated that she struggles to focus when reading or watching television.  She also stated that she cries when faced with stress.

### B.  Hearing on August 5, 2010

Plaintiff was 52 years old at the time of the hearing, and lived with her mother, father, and grandmother.  (Tr. 376-377).  She attended school through the twelfth grade.  (Tr. 376).  According to plaintiff's testimony, plaintiff became disabled in 1997 when she injured her back.  (Tr. 378).  She testified that she has been diagnosed with depression and general anxiety disorder, and has had back surgery and heart problems.  (Tr. 379).  She reported taking Pristiq and Clozapine for depression, Zyprexa and Lunesta for sleeping, and prenatal vitamins because of hair loss.  (Tr. 380).  Plaintiff stated that she has thoughts of suicide and cries almost every night (Tr. 382-383).

Plaintiff testified that she used to be able to read a 500-page book in a few days, but now it takes her a week and she cannot remember what she read afterward. She stated that she does not cook.  She spoke of her hallucinations and her difficulty sleeping.  She does not like to be around other people, and she stays in her bedroom to be alone.  Plaintiff testified to pain in her  lower right back which travels to her legs. She indicated that this pain occasionally causes her to lie on her back the whole day, and makes vacuuming and climbing stairs challenging.  (Tr. 384-388; 393-394;397).

Susan Shea, a vocational expert, testified about employment opportunities for a hypothetical individual with plaintiff's education and age, with the ability to perform light work, without rigorous production pace, ladders, ropes, or scaffolds, and only occasional balancing, stooping, kneeling, crouching, crawling, ramps, and stairs.  (Tr. 401).  She opined that such an individual would be able to perform housekeeping or cleaning jobs (of which there are 4,000 within the state of Missouri) (Tr. 401), laundry positions (3,000 within the state of Missouri), or light lawn working jobs (1,000 within

the state of Missouri).  (Tr. 402).   She further testified that these jobs allow 15 or 30 minutes breaks every 1.5 - 2 hours (Tr. 403), and an individual could be absent from these jobs no more than 2 days per month.  (Tr. 404).  Finally, the expert testified that these jobs are simple and routine, and do not involve interaction with the general public.  (Tr. 404).

### C.  Medical Evidence

Plaintiff claims that the ALJ erred by failing to include in his decision the credibility assessment contained in two lay witness statements that plaintiff submitted. Because the issue raised is narrow, this Court will limit the summary of medical evidence in this case to that which is relevant to the credibility of the plaintiff's testimony.  As discussed below, the medical evidence that discredits plaintiff's allegations also discredits the lay witness statements.

On April 10, 2008, plaintiff was admitted to the hospital for chest pain.  A 90% occlusion of the right coronary artery was discovered and a stent was placed.  During a follow-up visit, Bryan Beck, M.D., wrote that plaintiff was doing "phenomenally well" and "doing very well status post her RCA stent."  (Tr. 600-607).  With regard to plaintiff's degenerative disc disease, after back surgery in 2006, Dr. Mike-Mayer reported plaintiff was doing "reasonably well in the early post operative course."  (Tr. 317-318).  On April 21, 2009, Annamaria Guidos, M.D., performed a consultative examination of plaintiff's physical and mental functioning.  Dr. Guidos observed that plaintiff had a normal gait, normal range of motion, and no spasm (Tr. 636), and plaintiff denied depression, anxiety, memory loss, hallucinations, and suicidal ideation. (Tr. 634).  At the Community Counseling Center, Shajitha Nawaz ,M.D., plaintiff's primary psychiatrist, observed overall normal mental functioning.  (Tr. 248, 243, 239,

237). In a consultative examination prior to plaintiff's alleged onset date, Mark Kinder, Ph.D., observed essentially normal mental status. (Tr. 180-188). On April 23, 2009, Marsha Toll, Psy.D., completed a Psychiatric Review Technique. (Tr. 638-648). She concluded that plaintiff had a medically determinable degree of depression and anxiety but that the conditions were not severe. (Tr. 638). Plaintiff had mild difficulty maintaining social functioning, concentration, persistence, and pace, as well as performing activities of daily living. Plaintiff had no episodes of decompensation. (Tr. 646). In a narrative section, Dr. Toll noted "the presence of mental impairments but the preponderance of evidence finds claimant with an intact mental status and no significant limitations. Her mental status is assessed as non-severe and [her] allegations are not fully credible." (Tr. 648).

### III. The ALJ's Decision

In the decision issued on February 24, 2011, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since February 15, 2006, the application date.

2. Plaintiff has the following severe impairments: degenerative disc disease, coronary artery disease, with stent placement in April 2008, major depressive disorder, generalized anxiety disorder, and a history of alcohol abuse in remission.

3. Plaintiff does not have an impairment or combination of impairments that meets or substantially equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. Plaintiff has the residual functional capacity to perform a limited range of light work: she can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She can stand and walk for 6 hours in an 8-hour day and can sit for 6 hours in an 8-hour day. She needs to change positions for 1-2 minutes every 30 minutes, and cannot climb ladders, ropes, or scaffolds. She can occasionally bend, stoop, kneel, crouch, and crawl, and climb ramps or stairs. She can perform simple routine tasks

>   independently without direct interaction with the public.  She should not be subject to strict production quotas or rigorous production pace.
>
> 5.   Plaintiff has no past relevant work.
>
> 6.   Plaintiff was born on October 23, 1957 and was 48 years old on the date the application was filed.
>
> 7.   Plaintiff has at least a high school education, and is able to communicate in English.
>
> 8.   Transferability of job skills is not an issue because plaintiff has no past relevant work.
>
> 9.   Considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform.
>
> 10.  Plaintiff has not been under a disability, as defined in the Social Security Act, since February 15, 2006, the date the application was filed.

(Tr. 340-351).

## IV.  Legal Standards

The district court must affirm the Commissioner's decision "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)).  If, after reviewing the record, the court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) (quotations and citation omitted).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months.  42 U.S.C. § 423(a)(1)(D), (d)(1)(A); Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009).  The Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009).  "Each step in the disability determination entails a separate analysis and legal standard."  Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 2006).

Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment.  Pate-Fires, 564 F.3d at 942.  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five.  Id.

"Prior to step four, the ALJ must assess the claimant's residual functioning (sic) capacity ("RFC"), which is the most a claimant can do despite her limitations."  Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)).  "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *2. "[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations by treating physicians and others, and an individual's own description of his limitations."  Moore, 572 F.3d at 523 (quotation and citation omitted).

In determining a claimant's RFC, the ALJ must evaluate the claimant's credibility. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2002).  This evaluation requires that the ALJ consider "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011) (quotation and citation omitted). "Although 'an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them,' the ALJ may find that these allegations are not credible 'if there are inconsistencies in the evidence as a whole.'" Id. (quoting Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005)).  After considering the seven factors, the ALJ must make express credibility determinations and set forth the inconsistencies in the record which caused the ALJ to reject the claimant's complaints.  Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

At step four, the ALJ determines whether claimant can return to her past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e).  The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work.  Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005).

If the ALJ holds at step four of the process that a claimant cannot return to past relevant work, the burden shifts at step five to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy.  Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001).  See also 20 C.F.R. § 404.1520(f).

If the claimant is prevented by her impairment from doing any other work, the ALJ will find the claimant to be disabled.

## V.  Discussion

Plaintiff contends that the ALJ erred in failing to explicitly assess the credibility of the written statements submitted by her ex-husband, Dewight J. Litleton, and her ex-brother-in-law, DeWayne C. Litleton.  (Tr. 160-161).

The Eighth Circuit has encouraged ALJs to directly address the credibility of third-party statements, and has criticized the failure to do so as "an arguable deficiency in opinion writing technique."  Robinson v. Sullivan, 956 F.2d 831, 841 (8th Cir. 1992).  However, such a failure does not always require remand.  The Eighth Circuit "has not always insisted that the ALJ explicitly explain its reasons for discrediting a third-party's statements about the claimant's condition."  Buckner v. Astrue, 646 F.3d 549, 559 (8th Cir. 2011).  Furthermore, "'[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.'"  Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

In support of her claim, plaintiff relies on Eighth Circuit cases in which the ALJs failed to address lay witness opinions that were uncontradicted by the record. Bassinger v. Heckler, 727 F. 2d 1166, 1169 (8th. Cir. 1984); Smith v. Heckler, 735 F.2d 312, 316 (8th Cir. 1984).  This was held to be reversible error.  However, the failure to

discuss lay witness credibility is not reversible error in cases in which the ALJ made an express credibility determination of the plaintiff, and the evidence leading the ALJ to discredit the plaintiff's testimony also discredits the third-party testimony. For example, in Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995), "although the ALJ failed to list specific reasons for discrediting the testimony of [lay witness] Carol Bennett, it is evident that most of her testimony concerning Lorenzen's capabilities was discredited by the same evidence that discredits Lorenzen's own testimony concerning limitations." More recently, in Buckner v. Astrue, 646 F.3d at 560, the Eighth Circuit held the ALJ's failure to mention a statement of the claimant's girlfriend was not a reversible error, because "the same evidence that the ALJ referred to in discrediting Buckner's claims also discredits the girlfriend's claims."

In the instant case, the statements of the third-party witnesses are similar to plaintiff's own testimony, and are contradicted by the same evidence in the record. The ALJ considered plaintiff's testimony that plaintiff "could not work because of the effects of heart disease, back pain and depression," that "because of depression and anxiety she had difficulty sleeping…," and that "she could sit 30-45 minutes at a time, stand for 20 minutes at a time and that she had to lie down every hour during the day." (Tr. 345). DeWayne and Dewight Litleton's statements similarly address plaintiff's capacity for physical exertion, ability to sleep, and plaintiff's apparent mood and demeanor.[1]

The ALJ found plaintiff's testimony not credible after considering the medical records. The ALJ noted that records show marked improvement of plaintiff's physical

---

[1] DeWayne C. Litleton stated that plaintiff was a "semi-invalid in constant pain, who couldn't sit or stand for any significant amount of time. She no longer fished or hunted or rode horses and seem [sic] withdrawn from life." (Tr. 160). Dewight J. Litleton stated that plaintiff cannot sleep, "seems tired and depressed," and "is unable to stay active for more than ½ hour at a time until she has to rest." (Tr.161).

condition after treatment.  After a stent placement for heart disease, cardiologist Dr. Beck noted plaintiff was doing "fantastically well" (Tr. 346), and plaintiff's pain from degenerative disc disease "greatly improved" after surgery.  (Tr. 346).  During the consultative examination, Dr. Guidos observed normal gait pattern and normal range of motion.  (Tr. 347).  Furthermore, the ALJ observed that medical records regarding plaintiff's psychological condition show consistently normal mental status exams (Tr. 347) as well as clinical observations indicating essentially normal functioning.  (Tr. 348).  Plaintiff herself denied depression and anxiety at the consultative examination by Dr. Guidos.  (Tr. 347).  The ALJ conducted a detailed assessment of the plaintiff's credibility, and reached his conclusion "[a]fter careful consideration of the entire record."  (Tr. 342).  Ultimately, the ALJ concluded that the plaintiff has a residual functional capacity to perform light work as defined in 20 CFR 416.967(b).  (Tr. 344).  This residual functional capacity "does not conflict with the opinion of any treating source; and in fact no treating source has imposed any activity restrictions in actual medical treatment notes."  (Tr. 346-347).

In conclusion, the Court finds that the ALJ's failure to address the third-party statements of Dewight and DeWayne Litleton does not constitute reversible error.

## VI.  Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision is supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by plaintiff in her brief in support of complaint [#19] is **denied**.


A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 10th day of September, 2012.